Robert S. Clark (#4015)
Chad S. Pehrson (#12622)
Steven R. Glauser (#15607)
PARR BROWN GEE & LOVELESS
101 South 200 East, Suite 700
Salt Lake City, UT  84111
Telephone: (801) 532-7840
rclark@parrbrown.com
cpehrson@parrbrown.com
sglauser@parrbrown.com

*Attorneys for Plaintiff ProLung, Inc.*

---

### IN THE UNITED STATES DISTRICT COURT

### IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PROLUNG, INC.<br><br>        Plaintiff,<br><br>v.<br><br>STEVEN C. EROR,<br>TODD MORGAN,<br>MICHAEL CHRISTENSEN,<br>WEILD & CO. LLC,<br>UNITED SHAREHOLDERS OF<br>PROLUNG,<br>And JOHN DOES 1-250,<br><br>        Defendants. | **AMENDED COMPLAINT**<br><br><br>Case No.  2:18-cv-00613-EJF<br><br>Magistrate Judge Evelyn J. Furse<br><br><br>Jury Demand |

Plaintiff ProLung, Inc. ("ProLung" or the "Company"), through its undersigned counsel,

alleges as follows:

### I.  SUMMARY OF ACTION

1.  This action arises from multiple unlawful proxy solicitations by a group that includes the

disgruntled former CEO of ProLung, Steven C. Eror. Other participants in the solicitations

include Weild & Co., Michael Christiansen, Ron Dunford, Brian Loveridge, Todd Morgan, Don Patterson, Richard Serbin and Eric Sokol (collectively, with Mr. Eror, the "Defendants").

2.   On June 26, 2018, ProLung terminated Mr. Eror's employment for cause after an investigation by the Audit Committee determined that Mr. Eror misappropriated company funds, failed to provide appropriate expense reports with respect to hundreds of transactions using Company funds, and refused to cede control of administrator passwords (giving him full access and control) of key ProLung systems notwithstanding a demand from the independent directors and Audit Committee.  Mr. Eror's refusal to cede control of administrator passwords hindered the Company's ability to establish required accounting and other internal controls. Furthermore, these passwords were needed, in part, to investigate Mr. Eror's use of security cameras placed at the instruction of Mr. Eror throughout the office, including hidden in the HVAC vent above a female employee.  Mr. Eror did not provide the passwords and other codes even though the Company demanded them over and over again; in fact, Mr. Eror still has not provided these passwords despite a formal Board resolution that he provide them.  The Company's independent directors were also concerned about a number of additional matters related to the personal integrity of Mr. Eror, his troubling treatment of female employees and his lack of effectiveness as a leader.

3.   Mr. Eror and his co-defendants are now waging a campaign to persuade stockholders to re-install Mr. Eror and give him control of the Board; their campaign is being conducted in violation of the federal securities laws.

4.   ProLung's common stock is registered under Section 12(g) of the Exchange Act.  As such, federal securities laws applicable to securities registered under Section 12 of the Exchange

Act are applicable to ProLung.

5.  ProLung brings this action for injunctive and declaratory relief to protect its stockholders from Defendants' improper efforts to obtain control of the Company's Board by soliciting consents from stockholders without complying with the federal securities laws.

6.  In July 2018 Defendants delivered to stockholders consent solicitations to remove ProLung's current directors and replace them with Defendants' own slate of director nominees. This "July Solicitation" completely failed to comply with the requirements of the United States securities laws.  Among other issues, Defendants failed to timely and properly disclose their formation as a group of stockholders, the identities and backgrounds of the group's members, the contracts, arrangements or understandings of its members with respect to the Company, its plans to change or influence control of the Company, and its solicitation for stockholders to replace the Company's board of directors and management, all in contravention of the requirements imposed by Sections 13(d), 14(a) and 16 of the Securities Exchange Act of 1934 ("Exchange Act") and the rules and regulations promulgated thereunder.  No consent solicitation statement on Schedule 14A was filed for the July Solicitation with the Securities and Exchange Commission (the "SEC") as required by Regulation 14A promulgated under the Exchange Act (the "*Proxy Rules*").

7.  Furthermore, to the Company's knowledge, the July Solicitation has not been withdrawn.

8.  Subsequent to the July Solicitation, Defendants have sent numerous additional communications to stockholders.  While Defendants—following the filing of the initial Complaint in this litigation— made at least some of the necessary disclosures and public filings regarding these subsequent communications, their communications nonetheless continue to be

inaccurate and misleading, violating important securities laws including Regulation 13D and the Proxy Rules as set forth in more detail below.

9.   Sections 13(d) and 14(a) of the Exchange Act were enacted to protect investors in U.S. securities markets by providing a level playing field for contests over corporate control. Section 13(d) of the Exchange Act and the rules promulgated thereunder require that any person or group of persons beneficially owning more than five percent of any registered class of equity security must disclose to the issuer, the SEC, and the exchanges on which the stock is traded certain information, including, among other things, their identity, interest in the issuer, and plans or proposals, within 10 days of acquiring such an interest or forming such a group. Section 13(d) disclosures are vital to ensuring that investors have accurate and timely knowledge.

10. Similarly, Section 14(a) of the Exchange Act and the rules promulgated thereunder require that any solicitation of a proxy or written consent be preceded by the filing and delivery of a disclosure document in the form of a Schedule 14A filing, and prohibit any person from soliciting proxies on the basis of false and misleading information.

11. In scenarios where groups such as Defendants act without making proper and accurate Sections 13(d) and 14(a) disclosures, companies and their stockholders are vulnerable to changes in corporate control arising from undisclosed agreements among stockholders with a large block of shares or misleading information about the soliciting group, their nominees or the company. Such undisclosed agreements potentially enable certain stockholders to take control of a company without warning, to the distinct disadvantage of other uninformed stockholders. Moreover, stockholders advocating for change often have financial incentives that need to be disclosed, including incentives that may present conflicts of interests with other stockholders.

Finally, stockholders have the right to receive information about nominees for director, including any prior transactions with the target company, any financial interest that may arise as a result of the nomination, the nominees' prior convictions, adverse regulatory orders, bankruptcies and other matters. Sections 13(d) and 14(a)'s disclosure requirements aim to protect stockholders who are not part of the group by requiring the group to disclose information sufficient to allow other stockholders to fairly evaluate the group's plans and motivations, when making investment and voting decisions.

12. Pursuant to the claims presented herein, ProLung seeks injunctive relief to order Defendants to provide specific public corrections of prior misstatements, and further halt and prevent the recurrence of ongoing violations of the federal securities laws in connection with Defendants' campaign to solicit stockholders' consents.  ProLung requests that Defendants and all those acting in concert with them publicly retract and correct both misstatements and omissions—including those previously disseminated and those currently being disseminated, and further be enjoined from making additional misstatements and omissions.  If left uncorrected, Defendants' misstatements and omissions will deprive ProLung's stockholders the opportunity to make decisions on the future of their Company based on full and accurate information.  Furthermore, ProLung requests that all consents, proxies and votes previously obtained by Defendants be considered null and void.  ProLung also seeks appropriate monetary relief, including its costs and fees incurred in bringing this action.

## II.  JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to Section 27 of the Exchange Act, as amended, 15 U.S.C. §§ 78aa, 78(m)(d)(3), 78(n)(a); 15 U.S.C. § 1121, and 28

U.S.C. §§ 1331.  Section 27 of the Exchange Act, 15 U.S.C. § 78aa, confers exclusive

jurisdiction upon the federal courts for "all suits in equity and actions at law" to enforce any

liability or duty under the Exchange Act. Section 27 further provides that any such suit or action

may be brought in any district in which "any act or transaction constituting the violation

occurred." The acts and transactions constituting the violations alleged herein have taken place

in this District, by virtue of ProLung's office in Salt Lake City, and each of Defendants'

contacts with ProLung.

14. Venue is proper in this District pursuant to 15 U.S.C. § 78aa and 28 U.S.C. §§ 1391(b)

in that a substantial part of the events or omissions giving rise to the claim occurred in this

district and that the Company that is the subject of the action is situated in this district.

15. Declaratory relief is appropriate pursuant to 28 U.S.C. § 2201 because an actual

controversy exists regarding the propriety of Defendants' compliance with Sections 13(d) and

14(a) of the Exchange Act.

## III.  THE PARTIES

16. ProLung is a Delaware corporation with its principal place of business at 757 East South

Temple, Suite 150, Salt Lake City, Utah 84102.

17. ProLung is a medical technology company focused on the development of precision

predictive analytical medical devices to assess the risk of lung cancer.

18. Defendant Steven C. Eror is a shareholder of ProLung and the former CEO and a former

Director of ProLung.  Mr. Eror is a nominee for director in Defendants' shareholder

communications.  Mr. Eror is a resident of Utah and is subject to the jurisdiction of this Court.

19. Defendant Todd Morgan is a shareholder of ProLung, and a former director at ProLung. Mr. Morgan resigned as director on or about June 27, 2018.  Mr. Morgan is a nominee for director in Defendants' shareholder communications.  By virtue of his activities as alleged herein, including his purposeful contacts with ProLung, Mr. Morgan is subject to the jurisdiction of this Court.  Furthermore, Mr. Morgan is a resident of Utah.

20. Defendant Weild and Co. has performed broker services on behalf of the Company. Weild and Co. appears to also be known by several DBAs or affiliates.  Weild and Co. through its employees and agents, including Mr. Christiansen, played an integral role in the July Solicitation, disclosed nonpublic information regarding ProLung, and continues to actively solicit proxies of ProLung stockholders.  Weild and Co. does business in Utah, and furthermore by virtue of its activities as alleged herein, including its purposeful contacts with ProLung, Weild and Co. is subject to the jurisdiction of this Court.  Weild & Co. has acted as broker and placement agent for the Company in connection with several private placements of the Company's equity securities conducted over the past three years. Troublingly, Defendants' public filings do not acknowledge or describe this significant relationship between Weild & Co. and the Company even though one of the Defendants' nominees—Mr. Christiansen—currently serves as Managing Director, Chief Financial Officer and Treasurer of Weild & Co.  Several stockholders solicited in connection with the July Solicitation stated that they were contacted by agents representing Weild & Co. repeatedly and urged to support the July Solicitation.

21. Defendant Michael Christiansen is Managing Director, Chief Financial Officer and Treasurer of Weild & Co.  Mr. Christiansen is a nominee for director in Defendants' shareholder communications.  By virtue of his activities as alleged herein, including his

purposeful contacts with ProLung, Mr. Christiansen is subject to the jurisdiction of this Court.

22. Defendant Ron Dunford is President and CEO of Mentors International.  Mr. Dunford is a nominee for director in Defendants' shareholder communications.  By virtue of his activities as alleged herein, including his purposeful contacts with ProLung, Mr. Dunford is subject to the jurisdiction of this Court.

23. Defendant Brian Loveridge is an emergency medicine physician. Mr. Loveridge is a nominee for director in Defendants' shareholder communications.  By virtue of his activities as alleged herein, including his purposeful contacts with ProLung, Mr. Loveridge is subject to the jurisdiction of this Court.

24. Defendant Don Patterson is CEO of Innovative Coatings, Inc.  Mr. Patterson is a nominee for director in Defendants' shareholder communications.  By virtue of his activities as alleged herein, including his purposeful contacts with ProLung, Mr. Patterson is subject to the jurisdiction of this Court.

25. Defendant Richard Serbin is Managing Director of Platform Health Ventures.  Mr. Serbin is a nominee for director in Defendants' shareholder communications.  By virtue of his activities as alleged herein, including his purposeful contacts with ProLung, Mr. Serbin is subject to the jurisdiction of this Court.

26. Defendant Eric Sokol is an entrepreneur.  Mr. Sokol is a nominee for director in Defendants' shareholder communications.  By virtue of his activities as alleged herein, including his purposeful contacts with ProLung, Mr. Sokol is subject to the jurisdiction of this Court.

## IV.  FACTUAL ALLEGATIONS REGARDING DEFENDANTS' SOLICITATION MATERIALS

### IV.A.  *July Solicitation—Conveyed and Never Withdrawn*

27. On or about July 17, 2018, Defendants launched the July Solicitation to ProLung's stockholders. An example of the July Solicitation is attached hereto as Exhibit A.  The July Solicitation, a formalization of previous efforts by Defendants to influence ProLung stockholders, stated that it was a request "for your shareholder vote to expand the number of directors and elect a new Board of Directors for Pro Lung, Inc."  The July Solicitation asked stockholders to agree to (i) remove the current members of the Company's Board of Directors (the "Board"), (ii) expand the size of the Board and (iii) appoint eight nominees proposed by Defendants to the Board, namely Mr. Eror, Mr. Morgan, Michael Christiansen, Ron Dunford, Brian Loveridge, Don Patterson, Richard Serbin and Eric Sokol.

28. The July Solicitation requested stockholders' "immediate attention."

29. The July Solicitation confusingly directed that stockholders forward signed consents to "prolunginc@yahoo.com."

30. The July Solicitation stated: "If you have any questions, for example, if you need to verify the number of shares you own, please email your questions to prolunginc@yahoo.com and we will respond immediately."

31. The July Solicitation purported to include "backgrounds on the eight proposed Board Members."

32. The July Solicitation included a document entitled "WRITTEN RESOLUTIONS OF SHAREHOLDERS OF PROLUNG, INC. HOLDING MORE THAN 50% OF ITS OUTSTANDING SHARES REGARDING APPOINTMENT OF A NEW BOARD OF

DIRECTORS, EFFECTIVE IMMEDIATELY."  This document presented approval of "Special Resolutions regarding the appointment of new directors of ProLung, Inc. as set forth below, without a meeting, without prior notice and without a vote of all stockholders entitled to vote."

33. The "Written Resolutions" document stated: "Special Resolution 1: The current Board of Directors of ProLung, Inc., comprised of Scott Nixon, Bob Raybould, Mike Garff and Mark Anderson, shall hereby be removed. A new Board of Directors of Prolung, Inc., comprised of eight (8) directors, each of whom will be of one class of directors, are approved and appointed by a vote of stockholders holding a majority of the outstanding shares of the Company."

34. The "Written Resolutions" document stated: "Special Resolution 2: Appointment of Todd Morgan, Eric Sokol, Michael Christiansen, Steven Eror, Richard Serbin, Brian Loveridge, Ron Dunford, and Don Patterson, each as a Class I Director, with terms expiring in 2019."

35. The July Solicitation stated: "Once given, your vote for these Special Resolutions may not be revoked."

36. On July 26, 2018, Defendants filed a press release announcing their intent to commence a consent solicitation to amend the First Amended and Restated Bylaws of the Company and take the actions described in the July Solicitation.

37. To the Company's knowledge, the July Solicitation has not been withdrawn, and stockholders have not been advised of its source, its illegal nature, and the numerous misrepresentations contained therein.

### IV.B.  *August-September 2018 Shareholder Communications.*

38. Recently, following the filing of the initial complaint in this litigation which identified the flagrant violations and omissions committed in connection with the July Solicitation,

Defendants pivoted in their approach and began making certain public disclosures and public filings in connection with various August-September communications.

39. On August 6, 2018, Defendants filed a preliminary consent solicitation statement with the SEC to solicit written consents from the Company's stockholders to amend the Bylaws and elect the nominees named in the July Solicitation.

40. On August 7, 2018, Defendants issued a press release regarding the Preliminary Consent Solicitation (the "August 7 Press Release"). The August 7 Press Release was not filed with the Commission until two days later on August 9, 2018. The August 7 Press Release is attached hereto as Exhibit B.

41. On August 21, 2018, Defendants filed Amendment No. 3 to their Schedule 13D/A with the SEC (the "Schedule 13D/A").

42. On or about August 22, 2018, Defendants filed and began disseminating a definitive consent solicitation (the "Definitive Consent Solicitation Statement"). The Definitive Consent Solicitation Statement is attached hereto as Exhibit C.

43. Among other things, the Definitive Consent Solicitation Statement stated: "On June 26, 2018, after more than thirteen years of service as ProLung's co-founder and leader, the Board voted to terminate Mr. Eror's employment for cause, based on disputed facts which Mr. Eror has challenged and plans to vigorously fight."

44. The Definitive Consent Solicitation Statement contains five separate proposals, including modifications to the bylaws and the election of eight individuals to serve as directors of the Company, namely Michael N. Christiansen, Ron Dunford, Steven C. Eror, Brian W. Loveridge, Todd M. Morgan, Don A. Patterson, Richard Serbin and Eric M. Sokol. The

"Reasons for our Solicitation" section includes unfounded and false claims related to the Company and its Board.

45. On or about August 25, 2018, Defendants through Mr. Eror began sending an email communication ("August 25 Email") to stockholders re-iterating certain statements made in the Definitive Consent Solicitation Statement, including: "We do not have any specific plans to reinstate Mr. Eror as the Company's CEO if we are successful in electing the Nominees in this solicitation, nor is Mr. Eror's purpose in conducting this solicitation to be re-installed as CEO of ProLung. Rather, our chief purpose in seeking to appoint the Nominees is to ensure that the best interests of stockholders are properly represented in the boardroom and to best position ProLung for FDA approval and building an infrastructure to launch the United States market."

46. The August 25 Email further stated: "We urge you to vote in favor of all five Proposals and elect our Nominees to the Board in order to restore the effective oversight. [sic]Transparency [sic] and accountability that we believe is much needed at the Company at this time." The August 25 Email is embedded in pages 3-4 of the August 27 Solicitation defined below and attached hereto as Exhibit D.

47. On or about August 27, 2018, Defendants began disseminating additional proxy materials ("August 27 Solicitation").  The August 27 Solicitation included the following statements: "We believe our Nominees possess the collective knowledge and strategic expertise to serve the best interest of ProLung stockholders, particularly given Mr. Eror's more than a decade of leadership and management experience at ProLung in capital raising and research and development.  We view our slate of eight Nominees as qualified and experienced individuals who, if elected, would provide the proper oversight and direct management to take decisive steps

to maximize stockholder value during the Company's development and commercialization of the ProLung Test and FDA review of its Statistical Analysis Plan.  We do not have any specific plans to reinstate Mr. Eror as the Company's CEO if we are successful in electing the Nominees in this solicitation, nor is Mr. Eror's purpose in conducting this solicitation to be re-installed as CEO of ProLung. Rather, our chief purpose in seeking to appoint the Nominees is to ensure that the best interests of stockholders are properly represented in the boardroom and to best position ProLung for FDA approval and building an infrastructure to launch the United States market." The August 27 Solicitation is attached hereto as Exhibit D.

48. On or about August 29, 2018, Defendants issued a press release re-iterating statements made in prior shareholder communications ("August 29 Press Release"). The August 29 Press Release is attached hereto as Exhibit E.

49. On or about August 30, 2018, Defendants through Mr. Eror began sending an email communication ("August 30 Email") to stockholders including several false and misleading statements, including:  "I have little to gain here personally, and I am risking a lot to bring this alternative to you.  [...]  In a few days we are likely to have a majority." The August 30 Email is attached hereto as Exhibit F.

50. On September 12, 2018, Defendants through Mr. Eror issued a press release setting forth several false, misleading and/or unsupported statements, including: alleging that the Board's investigation into Mr. Eror's was a "surreptitious and self-serving investigation founded on baseless allegations"; stating their "belief" that "ProLung is on the brink of organizational failure and facing imminent insolvency"; stating their "belief" about  board members' improper motives; describing the concerns of unnamed "informed shareholders"; making inaccurate and

unsupported statements about the Company's relationship with an investment bank; and making

inaccurate and unsupported statements regarding ProLung's interactions with the FDA and

clinical trial patients.   The September 12 Press Release is attached hereto as Exhibit G.

51. For purposes of brevity and convenience herein, the aforementioned solicitations,

communications and press releases, and all other communications to stockholders since August

6, 2018, shall be referred to collectively as the "August-September Communications."

### V. DEFENDANTS MAKE MATERIAL MISSTATEMENTS AND OMISSIONS IN THEIR COMMUNICATIONS TO PROLUNG STOCKHOLDERS.

52. Defendants' communications to stockholders have not complied with the United States

securities laws.  The July Solicitation did not even attempt to comply with the relevant federal

securities laws, and the July Solicitation has not been withdrawn or revoked.  While the August-

September Communications were at least preceded, accompanied or followed-up with certain

public filings, the August-September communications nonetheless continue to violate the Federal

securities laws including, Regulation 13D and the Proxy Rules.

53. Pursuant to Section 14(a) and its associated regulations, any person or shareholder group

wishing to conduct a proxy solicitation for shareholder votes must comply with the disclosure

requirements mandated by the SEC in its Rules 14a-1 through 14a-15, 17 C.F.R. §§ 240.14a-1 to

14a-15. These requirements protect the interests of stockholders by assuring full and accurate

disclosure of material facts regarding the proposals for shareholder vote. To comply with these

rules, among other things, proxy solicitation materials must comply with the Exchange Act's anti-

fraud provisions, 15 U.S.C. § 78n(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9.

54. Pursuant to Section 13(d) and its associated regulations, persons having beneficial

ownership of more than five percent of the equity securities of any publicly traded company must

file disclosures with the SEC on a Schedule 13D setting forth their identity and background, any plans or intentions with respect to the issuer, whether the party has been enjoined or found to have violated any federal or state securities laws, as well as any agreements, understandings or arrangements they have among themselves or with others concerning the issuer's securities.

55. Defendants' failure to comply with these provisions has thwarted the purpose of Sections 14(a) and 13(d) and deprived ProLung's public investors of these protections.

56. Furthermore, Defendants' communications and solicitation materials to stockholders contain material misstatements and omissions, as detailed herein.

**V.A.** ***Defendants' July Communication to Stockholders Presents Misleading Information Regarding the Source of the Message, About Defendants' Director Nominees, and Fails to Disclose Motive For Consent Solicitation.***

57. In the July Solicitation, which has never been withdrawn, Defendants repeatedly encourage stockholders to contact them at the email address "prolunginc@yahoo.com." Defendants' use of this email address constitutes a misrepresentation intended to and with the likely effect of deceiving consumers as to the origin, source, sponsorship, or affiliation of the writers of the July Solicitation.

58. The July Solicitation also invited stockholders to contact *Defendants* to verify the number of shares of ProLung that the stockholders owned.  It is unclear how Defendants would be in a position to supply this information, but again this representation appears designed to deceive consumers into thinking that the source of the July Solicitation is actually ProLung, rather than a group of aggrieved stockholders.

59. Thus the July Solicitation creates the material misimpression that Defendants are ProLung, represent ProLung, or are affiliated with ProLung.

60. The July Solicitation presents misleading information about Defendants' chosen nominees to replace ProLung's directors.  For instance, the July Solicitation promotes Mr. Eror as a replacement director, including by stating that Mr. Eror "is ProLung's founder, and became Chief Executive Officer, President and Director of ProLung, Inc. in February 2005."  While it promotes Mr. Eror's experience with ProLung as putative qualification for becoming a director, the July Solicitation fails to state the following associated relevant, material facts regarding Mr. Eror's experience with ProLung:

a.  On June 26, 2018, the Board of Directors of ProLung terminated the employment of Steven C. Eror, Chief Executive Officer. This termination was for cause.

b.  The Board concluded that Mr. Eror had misappropriated funds from the Company through improper cash withdrawals, wire transfers, use of debit cards, receipt of advances or reimbursements and use of Company resources for personal purposes.

c.  The Board concluded that Mr. Eror had failed to provide expense reports that are complete, accurate and accompanied by receipts and other normal and customary documentation with respect to at least 1,100 transactions representing hundreds of thousands of dollars of Company expense, which failure represents misappropriation and willful misconduct continuing more than 30 days following notice and an opportunity to cure.

d.  The Board further found that Mr. Eror failed to provide the Chief Financial Officer with administrative passwords with respect to key Company systems (such as accounts related to security cameras, cell phones, Google, email and banking)

notwithstanding an initial demand by the independent directors on May 7, 2018 and additional requests, including an express demand in a letter from counsel on June 19, 2018, which failure has obstructed the ability of the Audit Committee to complete aspects of its investigation and which is inconsistent with proper internal controls and functioning of the Company.

e.  The Board further found relevant to the termination of Mr. Eror's employment that he had placed or directed to be placed a security camera hidden in an HVAC vent within an office at the headquarters of the Company that is currently occupied by a female employee, together with the alleged use of that or another Company camera to tape conversations between directors and potentially to monitor employees.

f.  The Board concluded that Mr. Eror engaged in transactions involving a conflict of interest without notifying and seeking approval of the Audit Committee; and

g.  The Board concluded that Mr. Eror was involved in the mistreatment of employees in various ways, including by acting in a harassing, controlling, verbally abusive, vindictive and demeaning manner, often in the presence of other employees. These actions by Mr. Eror intimidated and frightened employees. Employees described Mr. Eror using the following terms: volatile, unstable, unpredictable, abusive, secretive, very controlling, paranoid, belittling, intimidating, derisive, and berating (in volume, tone, and language).  Employees also reported inappropriate comments of a sexual nature as well as unsolicited touching.  For all these reasons, the Board determined that Mr. Eror's continuing presence in the

workplace was untenable.

61. In addition to failing to provide material information regarding Mr. Eror, the July Solicitation failed to provide other material information about other director nominees. ProLung's stockholders are entitled to know about the track record of Defendants' nominees with respect to their prior roles in the corporate governance of ProLung.  For instance, the July Solicitation fails to state that Mr. Morgan, a proposed candidate for Defendants' new slate of directors, resigned as director of ProLung on or about June 27, 2018.

62. Additionally, the July Solicitation did not disclose what monetary arrangements or understandings with respect to future service they had with the proposed directors or whether Weild & Co., whose CFO is a nominee, would be engaged to raise capital on behalf of ProLung if Defendants are successful.

63. The July Solicitation also is materially misleading because it fails to disclose Defendants' underlying motive for undertaking the consent solicitation, which appear to be Mr. Eror's efforts to retaliate with respect to his termination for cause by the Company.  Upon information and belief, Defendants' underlying and ulterior motive for the consent solicitation is to install a slate of directors who will agree to re-hiring Mr. Eror as CEO and/or a Director. The July Solicitation thus creates a material misimpression as to the true purposes for the consent solicitation.

64. As the July Solicitation was initiated on or about July 17, 2018, Defendants should have disclosed their group formation and their activities well before this date.  However, Defendants did not file the Schedule 13D/A disclosing the group formation until July 31, 2018, long after this group was formed and began taking actions to influence the control of the Company.

Moreover, Defendants still have not, to date, disclosed the July Solicitation on Schedule 13D or any other filing with the Commission.

   **V.B. *Defendants' August-September Communications to Stockholders Present False and Misleading Information, Including by Failing to Disclose Material Information Regarding the Qualifications of Defendant Director Candidate Richard Serbin.***

   65. As detailed above, Defendants disseminated a number of communications to stockholders in August.  The allegations herein focus on false, misleading, and inaccurate statements made in the Definitive Consent Solicitation Statement; however, identical or similar statements are made by Defendants in other communications within the August-September Communications as well.

   66. In the Schedule 13D/A disseminated to stockholders along with the Definitive Consent Solicitation Statement, Defendants averred that Mr. Eror owned 174,251 shares of common stock of the Company.  However, a supplemental decree of divorce dated June 29, 2018 ordered Mr. Eror to immediately transfer one-half of all shares commonly owned between him and his former wife, Judy Ann Eror, as of June 13, 2018, to Ms. Eror.  As such, the Schedule 13D/A representations regarding Mr. Eror's ownership are incorrect; Defendants' most recent revisions appear to correct the figure but fail to expressly note the correction—leaving stockholders unsure of the scope of the correction and thereby defeating the purpose of the correction.  Defendants should be required to amend their Schedule 13D/A representations and expressly state that the prior representations regarding Mr. Eror's ownership was inaccurate.

   67. The Definitive Consent Solicitation Statement states: "*On August 20, 2018, under Delaware law, the Company was required to provide a response to Mr. Eror's 220 Request and no response was received by Mr. Eror or his advisors.*"  This statement is factually and legally incorrect.  The books and records request was delivered to the Company on August 14, 2018.

Section 220 of the Delaware General Corporation Law states that the Company has five business days to reply to the request "after the demand has been made" and the "demand under oath shall be directed to the corporation at its registered office in this State or at its principal place of business." The Company responded to the request on August 21, 2018, the fifth business day after the demand was delivered—making inaccurate Defendants' claim to stockholders of a putative non-response from the Company.

68. The Definitive Consent Solicitation Statement also states: "*In particular, the resigning directors expressed to Mr. Morgan that they were under duress to approve Mr. Eror's termination due to threats of litigation made against them by an attorney hired by Mr. Nixon in his capacity as the Audit Committee Chairman.*" This statement is factually inaccurate and further misrepresents the interactions between the Company's legal representatives during the investigation into Mr. Eror's conduct and the Board. In truth, the full Audit Committee unanimously voted to engage an outside law firm to conduct the formal, internal investigation. Also false is the statement that there were any threats of litigation made against any member of the Board if such directors refused to terminate Mr. Eror. Directors have never been placed under duress or threatened with litigation if such directors refused to terminate Mr. Eror as Chief Executive Officer of the Company.

69. The Definitive Consent Solicitation Statement also states: "*We do have serious concerns that the current interim CEO, Michael Garff, lacks experience as a chief executive in either the medical technology industry or any relevant industry and that this could negatively impact the FDA review process*." This statement is inaccurate, incomplete, and misleading. Prior to Mr. Garff's appointment by the Board to the role of Interim Chief Executive Officer following Mr.

Eror's termination by the Company, Mr. Garff had been the Chief Operating Officer of the Company since June 2009. As Chief Operating Officer, Mr. Garff was responsible for securing the Company's right to sell its primary product in Europe, among other invaluable service. Therefore, it is misleading to state that Mr. Garff lacks relevant experience overseeing a medical technology company, as he has helped lead the Company for nearly a decade. Mr. Garff's putative lack of experience is a recurring theme in all of Defendants' shareholder communications.

70. The Definitive Consent Solicitation Statement also states: "*We do not have any specific plans to reinstate Mr. Eror as the Company's CEO if we are successful in electing the Nominees in this solicitation, nor is Mr. Eror's purpose in conducting this solicitation to be re-installed as CEO of ProLung.*" Plaintiff is in receipt of numerous communications from supporters of the Defendants stating that their expectations, informed by their interactions with Defendants, are for Mr. Eror to be reinstated as Chief Executive Officer of the Company. Therefore, on information and belief, Defendants' statement regarding absence of plans to reinstate Mr. Eror is a blatant lie to the Company's stockholders.

71. The Definitive Consent Solicitation Statement also states: "*Moreover, we believe that the current Board has misled stockholders by failing to disclose that Mr. Nixon was placed under investigation by the Governance Committee following his alleged unauthorized use of Mr. Eror's electronic signature on May 21, 2018 to file ProLung's 10-Q and CEO certification pursuant to Section 302 of the Sarbanes-Oxley Act.*" This contention is false. Robin Smith, as Chair of the Nominating and Governance Committee, opened the investigation regarding the use of Mr. Eror's signature on the Form 10-Q, and made no mention of Mr. Nixon. Indeed, Mr. Nixon was

never put under investigation for the events surrounding the filing of the Form 10-Q, nor does the audit committee control the use of electronic signatures.

72. The Definitive Consent Solicitation Statement also states: "*We believe that each of Messrs. Christiansen, Dunford, Loveridge, Morgan, Patterson, Serbin and Sokol presently is, and if elected as a director of the Company, would be, an "independent director" within the meaning of (i) applicable Nasdaq listing standards applicable to board composition, including Rule 5605(a)(2), and (ii) Section 301 of the Sarbanes-Oxley Act of 2002.*"  Mr. Christiansen presently is not, and if elected as a director of the Company, would not be, an "independent director" within the meaning of the Nasdaq Marketplace Rule 4200(a)(15), which states that a director is not independent if he is "a director who is . . . an executive officer of[] any organization to which the company made, or from which the company received, payments for property or services in the current or any of the past three fiscal years that exceed 5% of the recipient's consolidated gross revenues for that year, or $200,000, whichever is more."  Mr. Christiansen is an executive officer of Weild & Co. (a/k/a Weild Capital LLC), to whom the Company has paid approximately $1 million over the course of the past three fiscal years. Therefore, Defendants' statement that all of their director nominees are independent other than Mr. Eror is false.

73. The Definitive Consent Solicitation Statement also states: "*On July 31, 2018, the Company filed a complaint (the "Complaint") in the United States District Court for the District of Utah against Messrs. Eror, Christiansen and Morgan and other defendants . . . seeking (i) an order directing the defendants to correct alleged material misstatements and omissions in private communications to the Company stockholders . . . .*"  This characterization of the July

Solicitation as "private communications" is incorrect and misleading, and it disregards the Proxy Rules.  Under the securities laws, the July Solicitation was required to have been filed with the Commission on Schedule 14A under the SEC rules governing proxy solicitations and under Schedule 13D under Regulation 13D.  It cannot accurately be characterized as "private communications" to stockholders.

74. Furthermore, many of the August-September Communications, including the Definitive Consent Solicitation Statement have described the putative credentials and qualifications of Defendants' slate of replacement board members but have improperly failed to disclose highly relevant information.  For instance, as to Defendant and director candidate Richard Serbin, the Definitive Consent Solicitation Statement states the following regarding Mr. Serbin: "He has served as the Head of Global Corporate Development at CURE Pharmaceutical Holding Corp. since May 2017. Mr. Serbin is the Founder of Radius Scientific Corporation . . . . From 1979 to 1986, Mr. Serbin held various positions including serving as Vice President of Corporate Development at Ortho Pharmaceuticals, a Johnson & Johnson ("J&J") subsidiary and practiced Patent and FDA law at Revlon, J&J and Schering-Plough. He was Patent Attorney for Schering Plough Corporation and Chief FDA Counsel for Revlon and J&J. Subsequently, he worked at Revlon Corporation as its Chief Food, Drug and Cosmetic Counsel."

75. These statements to stockholders expressly promote Mr. Serbin's putative legal acumen, but fail to disclose that in 2010, Mr. Serbin was suspended from the practice of law for six months by the Supreme Court of New Jersey.  The Supreme Court found that Mr. Serbin violated attorney rules prohibiting the commission of criminal acts that reflect adversely on the attorney's honesty, trustworthiness or fitness as a lawyer, and conduct involving dishonesty fraud, deceit or

representation.  (Rules of Professional Conduct 8.4(b) and 8.4(c), respectively).  This suspension was based on Mr. Serbin's receipt of disability insurance benefits while gainfully employed.  Mr. Serbin pled guilty in August 2005 to one count of falsifying records in violation of NJSA 2C:21-4(a), which charge was ultimately dismissed through a pre-trial intervention program after Mr. Serbin repaid $220,869.05 in restitution.  The Supreme Court of New Jersey noted that a mitigating factor in Mr. Serbin's suspension was that he retired from the practice of law in 2009.

76. This undisclosed information regarding Mr. Serbin's qualifications and integrity is relevant and material to the stockholders' consideration of the Defendants' proxy materials, and should have been disclosed in the Definitive Consent Solicitation Statement and all other August-September Communications relating to Mr. Serbin.

**V.C.** *Defendants' August-September Communications to Stockholders Fail to Include a Reasonable Factual Basis for Each Statement or Assertion of Opinion or Belief.*

77. Rule 14a-9 requires any statement or assertion of opinion or belief in solicitation materials to be clearly characterized as such, and a reasonable factual basis must exist for each such opinion or belief.  Defendants at times attempt to couch such allegations as opinions, but the statements are both unsupported and false. These statements should be expressly rescinded and abandoned.

78. The Definitive Consent Solicitation Statement states: "*In addition, we believe that the Company has omitted a significant event in which Mark Anderson, the Company's CFO, used Mr. Eror's signature to sign and file expense reports that had already been claimed previously by Mr. Eror and which were subsequently submitted to the Audit Committee by Mr. Anderson for further investigation.*"  This contention is false and fails to include the requisite reasonable factual basis.  In truth, Mr. Eror himself re-submitted the "expense report that had been claimed

previously by Mr. Eror" without any other approval or oversight from management, and then signed the check written to himself that the Company had issued for such duplicate expense report.

79.     The Definitive Consent Solicitation Statement also states: "*We believe that the Company has similarly misled stockholders by failing to disclose that Mr. Anderson raised a stale human resource issue that was previously resolved and presented it to the Audit Committee as an unresolved employee concern in what we believe was an effort to take aim at Mr. Eror and deflect attention from a notice of disciplinary action to Mr. Anderson resulting from his alleged misuse of Company time to work for and bill third party clients for CPA services.*" This contention is false and fails to include the requisite reasonable factual basis. The first instance that Mr. Eror notified Mr. Anderson of any inkling of disciplinary action was in an email dated June 25, 2018. Internal investigations into Mr. Eror's conduct had commenced in May 2018, and Mr. Anderson gave statements to investigators over the course of that month, well before June 25, 2018 or when Mr. Eror accused Mr. Anderson of "deflect[ing] attention."

**V.D.** *Defendants Have Recently Made Unlawful Predictions, Further Violating Rules 14a-9 and 14a-6(b).*

80. Rule 14a-9 prohibits any statements in a proxy statement that are false or misleading with respect to any material fact or that omit to state any material fact necessary in order to make the statements therein not false or misleading. To assist in the enforcement of this Rule, the SEC included within its text express examples of statements that would be deemed misleading and, therefore, a violation of the Rule, including that "[c]laims made prior to a meeting regarding the results of a solicitation.".

81. The August 30 Email of the Defendants stated that "[i]n a few days we are likely to have a majority" of the consents necessary to prevail in their consent solicitation.  Upon information and belief, the Defendants have made, and continue to make, similar statements to dozens of stockholders.

82. Such statements materially mislead the investing public about the potential impact of their exercise of the stockholder franchise because they suggest that the outcome of a stockholder vote has already been determined, and furthermore can create an improper "bandwagon effect."

83. These claims about the ultimate outcome of the solicitation are illegal and undermine the integrity of the proxy process.  These predictions and assertions based on non-public proxy returns were wrongful for multiple reasons, including 1) because the reported vote status is inaccurate; and 2) Mr. Eror's statements fail to disclose any information regarding the source of his information regarding the vote tally, the number of votes cast for or against or abstaining, and the ability of stockholders to change their positions.  Furthermore, the August 30 Email constitutes proxy material that needs to be filed with the SEC pursuant to Rule 14a-6(b).

84. Additionally, Mr. Eror's representation of an imminent victory is further problematic because of Defendants' false representations in certain schedules that Mr. Eror owned 174,251 shares which could be voted in favor of himself and the other Defendants.

85. Defendants either had full knowledge—or should have known—that they were prohibited from making claims about the results of the proxy solicitation in this way, and that doing so doing would impeach the integrity of the process.

### V.E. Defendants Have Recently Made Unlawful Threats, Further Violating Rules 14a-9 and 14a-6(b).

86. On August 30, 2018, Defendant Eric Sokol hacked into a website owned by a business

owned by stockholder and former director Clark A. Campbell.

87. Mr. Sokol then demanded from Mr. Campbell the following: 1) that Mr. Campbell vote his personal ProLung shares in favor of the Defendants' proposals; 2) that Mr. Campbell pressure his brother, Travis Campbell, to vote his shares in favor of the Defendants' proposals; 3) that Mr. Campbell pressure his friend, Steve Whipple, to vote his shares in favor of the Defendants' proposals.  Mr. Sokol threatened that if the votes were not executed as demanded, Mr. Sokol would shut down the business website.

88. On August 30, 2018, Mr. Campbell communicated his refusal to concede to Mr. Sokol's demands.

89. Mr. Sokol subsequently shut down the business website as he had threatened to do.

90. Mr. Sokol's activities with respect to Mr. Campbell's business and website constitute criminal activity in violation of the Computer Fraud and Abuse Act codified at 18 U.S.C. 1030 *et seq.* Mr. Sokol knowingly and without authorization caused the transmission of a program, information, code and/or command that intentionally caused damage to a protected computer in violation of the Computer Fraud and Abuse Act.

91. Mr. Sokol's illegal activities with respect to the solicitation of the proxies of Mr. Campbell, Mr. Travis Campbell, and Mr. Whipple further constitute violations of the federal securities laws, including Section 14(a) and Rule 14a-9.

### FIRST CLAIM FOR RELIEF
**(Violations of Section 13(d) of the Exchange Act against all Defendants)**

92. ProLung repeats and realleges each allegation of the preceding paragraphs.

93. Defendants collectively own in excess of five percent of the outstanding shares of ProLung.

94. Defendants were required to make Schedule 13D filings setting forth various disclosures, including (a) the group of persons and entities acting together for the purpose of acquiring, holding, voting or disposing of ProLung stock; and (b) the terms and nature of the relationship between the group of persons and entities acting together for the purpose of acquiring, holding, voting or disposing of ProLung stock.

95. In violation of Section 13(d) of the Exchange Act, SEC Rule 13d-1 and SEC Rule 13d-5, as to the July Solicitation, Defendants failed to disclose the identity and the nature of their relationship with the group of persons and entities with whom they are acting together for the purpose of acquiring, holding, voting or disposing of ProLung stock.  The July Solicitation has not been withdrawn.

96. Subsequently, as alleged above, Defendants committed further violations of Schedule 13D with respect to the August Solicitations.

97. Defendants' violations of these securities laws have deprived and will continue to deprive ProLung's stockholders of the full and accurate information to which they are entitled and both ProLung and its stockholders will be irreparably harmed.

98. Accordingly, ProLung is entitled to (a) a declaration that Defendants have violated Section 13(d) of the Exchange Act, SEC Rule 13d-1 and SEC Rule 13d-5; (b) an order requiring Defendants to correct by public means their failures to comply with Section 13(d) of the Exchange Act, SEC Rule 13d-1 and SEC Rule 13d-5; and (c) a permanent injunction preventing Defendants from making any misstatements or omissions in connection with, or otherwise related to, any forthcoming Schedule 13D filings.

99. ProLung has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**(Violations of Section 14(a) of the Exchange Act and Rule 14a-9 against all Defendants)**

100.    ProLung repeats and realleges each allegation of the preceding paragraphs.

101.    Defendants have been and continue to be engaged in a proxy solicitation governed by Section 14(a) of the Exchange Act.

102.    As described above, Defendants in their July Solicitation and August Solicitations made numerous misleading misstatements and omissions of material facts in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9.

103.    The materially misleading misstatements and omissions in Defendants' July Solicitation and August Solicitations were made with at least the negligent state of mind required under Section 14(a) of the Exchange Act and SEC Rule 14a-9.

104.    If left uncorrected, the materially misleading misstatements and omissions in Defendants' July Solicitation and August Solicitations will deprive ProLung's stockholders the opportunity to make decisions on the future of their Company based on the full and accurate information to which they are entitled, and both ProLung and its stockholders will be irreparably harmed.

105.    Defendants' activities are illegal and coercive, and justify prompt injunctive relief as they have interfered with stockholders' right to make informed, uncoerced decision.

106.    Accordingly, ProLung is entitled to (a) a declaration that the July Solicitation and August Solicitations violate Section 14(a) of the Exchange Act and SEC Rules 14a-3, 14a-6, and 14a-9; (b) an order requiring Defendants to correct by public means the misleading misstatements and omissions in the July Solicitation and August Solicitations, and enjoining Defendants and other persons or entities acting in concert with them from exercising any rights

as ProLung stockholders, including their rights to vote or submit shareholder consents \; (c) an order enjoining Defendants from taking any action based on any consents that they may have obtained, or may obtain, pursuant to their ongoing consent solicitation; (d) an order invalidating and declaring void any consents, proxies and votes that Defendants may have obtained, or may obtain, pursuant to their ongoing consent solicitation; (e) an order enjoining Defendants from soliciting shareholder consents until 60 days after Defendants correct by public means their material misstatements and omissions in the Solicitation Materials; and (f) a permanent injunction preventing Defendants from making any additional misstatements or omissions in connection with, or otherwise related to, consent solicitations and other proxy contests or shareholder votes , including the July Solicitation and August Solicitations.

107.     ProLung has no adequate remedy at law.

### JURY DEMAND

ProLung hereby demands a jury as to its claims and all other issues for which  jury determination is appropriate.

### PRAYER FOR RELIEF

WHEREFORE, ProLung prays for a judgment against Defendants as follows:

1. Enter a temporary restraining order, preliminary and permanent injunction against Defendants, and all persons or entities acting in concert with them, ordering the following:

a) declaring that the July Solicitation and August Solicitations violate Section 13(d) of the Exchange Act and accompanying SEC rules;

b) declaring that the July Solicitation and August Solicitations violate Section 14(a) of the Exchange Act and  the SEC rules promulgated thereunder;

c) ordering Defendants and other persons or entities acting in concert with them to correct by public means their material misstatements and omissions and to file with the SEC accurate disclosures required by Sections 13(d) and 14(a) of the Exchange Act as well as the SEC rules promulgated thereunder;

d) enjoining Defendants and other persons or entities acting in concert with them from exercising any rights as ProLung stockholders, including their rights to vote or submit consents or proxies of other shareholders, until Defendants and such other persons or entities acting in concert with them correct by public means their material misstatements and omissions and file with the SEC accurate disclosures required by Sections 13(d) and 14(a) of the Exchange Act as well as the SEC rules promulgated thereunder;

e) enjoining Defendants and other persons or entities acting in concert with them from any trading in ProLung stock until Defendants correct by public means their material misstatements and omissions and file with the SEC accurate disclosures required by Sections 13(d) and the SEC rules promulgated thereunder;

f) enjoining Defendants and other persons or entities acting in concert with them from making any additional material misstatements or omissions in connection with, or otherwise related to, any future disclosures required by Sections 13(d) and 14(a) of the Exchange Act as well as the SEC rules promulgated thereunder;

g) enjoining Defendants and other persons or entities acting in concert with them from taking any action based on any shareholder consents that may have been obtained pursuant to Defendants' current or prior consent solicitations;

h) invalidating and declaring void any votes, proxies and consents that Defendants and other

persons or entities acting in concert with them may have obtained pursuant to Defendants' current or prior consent solicitations;

i) enjoining Defendants and other persons or entities acting in concert with them from soliciting shareholder consents in connection with the actions described in Defendants' July Solicitation and August Solicitations until 60 days after Defendants correct by public means their material misstatements and omissions in their July Solicitation and August Solicitations and file with the SEC accurate disclosures required by Sections 13(d) and 14(a) of the Exchange Act as well as the SEC rules promulgated thereunder;

j) enjoining Defendants and other persons or entities acting in concert with them from making or disseminating any additional misstatements or omissions in connection with, or otherwise related to, consent solicitations or other proxy contests or shareholder votes, including the solicitation of shareholder consents in the July Solicitation and August Solicitations;

k) ordering Mr. Eror to return control of administrator passwords of ProLung systems and company-issued equipment he has not returned;

2. Award ProLung its costs and disbursements in this action, including reasonable attorneys' and experts' fees; and

3. Grant ProLung such other and further relief as this Court may deem just and proper.

RESPECTFULLY SUBMITTED this 14th day of September 2018.

PARR BROWN GEE & LOVELESS

*/s Robert S. Clark*
Robert S. Clark
*Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 14th day of September, 2018, a true and correct copy of

**AMENDED COMPLAINT** was served via the Court's CM/ECF electronic filing system on the

following:


Erik A. Christiansen, USB #7372
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
EChristiansen@parsonsbehle.com


*/s/ Andrea Foutz*
Andrea Foutz